UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHANGJUN CHEN,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, et al.,<br><br>Respondents. | Case No. 2:26-cv-03295-TMC<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

## I. INTRODUCTION

Petitioner Changjun Chen is a citizen of the People's Republic of China. Chen entered the United States with his then ten-year-old daughter on a B-2 visitor visa in 2019. Dkt. 1 ¶ 3. He stayed beyond the visa's expiration date and applied for asylum in 2021. *Id.* Since then, he has "lived openly, kept his address current with USCIS [United States Citizenship and Immigration Services], attended to every scheduling notice he received, and complied with every condition placed upon him." *Id.* ¶ 52. In June 2020,[1] Interpol issued a "Red Notice" linking Chen to

[1] The actual Red Notice, provided by Petitioner as an exhibit, has a date of January 2022. Dkt. 1-2 at 4. It lists a warrant that was issued in China in 2020, which perhaps explains the discrepancy between the date on the exhibit and the date in the declaration submitted by Respondents.

allegations of loan fraud in China. Dkt. 6 ¶ 5. Other than the Red Notice, Chen has no criminal history. Dkt. 1 ¶ 3.

Chen went to an immigration check-in appointment in June 2026 and Immigration and Customs Enforcement ("ICE") agents detained him without warning. Dkt. 1 ¶ 4. ICE transported him to the Northwest ICE Processing Center ("NWIPC") where he remains. Dkt. 6 ¶ 15. He sought custody redetermination at a bond hearing before an Immigration Judge ("IJ") on July 19, 2026 but withdrew the request on August 5, 2026. *Id.* ¶¶ 13, 14.

Chen filed this habeas petition on September 14, 2026. Dkt. 1. Respondents filed a return on September 29. Dkt. 5. Chen did not file a reply and the matter is ready for review. For the following reasons, the Court concludes that ICE agents violated Chen's right to procedural due process when they arrested him without a meaningful opportunity to be heard and consequently, his petition for writ of habeas corpus (Dkt. 1) is GRANTED.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *see also Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Chen challenges "ICE's decision to seize and incarcerate him without any pre-deprivation process whatsoever." Dkt. 1 ¶ 22. He argues that before his arrest, he "lived openly in the community for years, maintained a known address, voluntarily appeared at USCIS, possessed no criminal conviction, and presented no emergency circumstance requiring immediate arrest without advance process." *Id.* ¶ 26. Indeed, Chen observes that he "was arrested

only because he voluntarily complied with the Government's instruction to appear at USCIS." *Id.* ¶ 137. Petitioner asserts that in choosing to arrest him, the government "apparently relied substantially upon an INTERPOL Red Notice requested by the People's Republic of China dated January 25, 2022." *Id.* ¶ 12.

Respondents counter with a broad assertion that as a noncitizen who overstayed his visa, "Petitioner has not demonstrated that his detention without pre-deprivation hearing violates due process." Dkt. 5 at 6. In cases with similar facts, however, numerous courts within the Ninth Circuit have rejected this argument. *See, e.g.*, *Kharitonova v. Albarran*, No. 3:26-cv-01362-JSC, 2026 WL 531441, at *1 (N.D. Cal. Feb. 25, 2026) (Russian citizen who entered on nonimmigrant visa and applied for asylum); *Gagik T. v. Chestnut*, No. 1:26-cv-04337-MWJS, 2026 WL 1837413, at *1 (E.D. Cal. June 25, 2026) (Russian citizen who entered on B-2 visitor visa and applied for asylum); *Sidhe v. Scott*, No. 26-cv-03188-TMC, 2026 WL 2935934, at *1 (W.D. Wash. Sept. 30, 2026) (Kenyan citizen who entered on B-1 business visa and applied for asylum).

Respondents acknowledge that the weight of authority is against them, *see* Dkt. 5 at 7, and while the Court appreciates their candor, it finds their attempt to distinguish those cases unavailing. Respondents argue that unlike the noncitizens in the above cases, Chen has never "been evaluated for flight risk or danger to the community." Dkt. 5 at 8. But in each of the cases cited above, the noncitizens also were not formally evaluated for flight risk or danger. Instead, the government demonstrated that it did not consider them a flight risk or danger by choosing not to detain them for years after they had affirmatively applied for asylum, made their presence known to the government, and sought a legal path to remain in the United States. *See, e.g.*, *Kharitonova*, 2026 WL 531441, at *2 ("The government's insistence that Petitioner lacks a liberty interest because it never before sought to detain her is specious. . . . . Although the

government did not detain and then release her, it made a decision *not* to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained."). The Court concludes that the circumstances of Chen's arrest are largely indistinguishable from the many due process cases decided in this District and elsewhere in the Ninth Circuit that have ordered release. *See Sidhe* at *3 (citing cases).

Respondents do not mention the Red Notice in their response brief, much less claim it prompted their action or demonstrated that Chen was a danger. Instead, Respondents take the position that Chen's five years spent pursuing an affirmative asylum application through USCIS—throughout which the government took no action to detain him—should play no role in the due process analysis. Dkt. 5 at 8–9 ("Thus, the private interest here is the same as any alien detained pursuant to Section 1226(a) whether an application for relief has been filed or not."). Under this reading, the due process clause places no pre-deprivation constraints on the government's ability to detain someone years after they overstayed their visa while applying for asylum, for any reason or no reason, without any change in circumstance showing they are a danger or flight risk. This comes dangerously close to a policy of arbitrary detention, one of the chief evils the Framers of the Constitution were "committed to guarding against." *Padilla v. U.S. Immigr. & Customs Enf't*, --- F.4th ----, 2026 WL 2822044, at *18 (9th Cir. Sept. 21, 2026).

Most district courts within the Circuit have rejected this argument, and the Court finds no reason to depart from that persuasive authority here. In sum, the government's decision to detain Chen without notice or hearing violated his right to procedural due process. The Court therefore GRANTS the habeas petition.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS:

1. The petition for writ of habeas corpus (Dkt. 1) is GRANTED.

2. Within ONE day of this Order, Respondents must RELEASE Petitioner Changjun Chen.
3. Respondents shall file a status report confirming Petitioner's release no later than October 22, 2026.
4. Respondents must return to Petitioner any personal property, including any personal identification document (other than a passport) and any employment authorization document.

Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412, and the parties are encouraged to confer before filing a petition.

Dated this 20th day of October, 2026.

Tiffany M. Cartwright
United States District Judge